UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

| | |
|---|---|
| **CARLOS DOMENECH ZORNOZA,** *Plaintiff*, v. **TERRAFORM GLOBAL, INC.,** *et al.*, *Defendants*. | Civil Action: 8:18-cv-02523-PX |

## DEFENDANTS' MOTION TO COMPEL DISCOVERY

**INTRODUCTION**

TerraForm Global, Inc. ("Global") and TerraForm Power, Inc. ("TERP") (collectively, "Defendants") respectfully request that the Court compel Plaintiff to: (i) supplement certain interrogatory responses and document productions related to damages and mitigation earnings and (ii) sit for a two-hour continuation of his deposition (via Zoom, at his option) to address questions relating to damages and mitigation. These steps are needed to bring discovery up to date through trial to allow an accurate calculation of Plaintiff's damages (if any).

A plaintiff's "back-pay" and "front-pay" damages arising from an allegedly improper employment termination generally consist of: (i) the sum that Plaintiff did not earn at the terminated employment following the date of termination, minus (ii) mitigation earnings following termination. *See* Ex. 1 James V. Farrell Dep. ("Farrell Dep.") Tr. 77:6-24. Plaintiff contends that he mitigated his alleged damages by starting his own company, Enfinity Global ("Enfinity"). Thus, for instance, Plaintiff's own damages expert subtracts Plaintiff's purported earnings at Enfinity in arriving at a purported damage figure. Ex. 1, Farrell Dep. Tr. 31:21-22. Moreover, Plaintiff's expert calculates damages through 2024. *See id.* at 184:24-185:5 ("Because of the nature of Enfinity and the unpredictability of its growth, I chose to end the damages period on December 31, 2024"); Ex. 2 at 8-9. Thus, the value of Plaintiff's compensation from Enfinity through 2024 is undeniably highly relevant.

However, discovery ended three years ago in 2021, so updated information about Plaintiff's earnings is needed to accurately calculate damages (or lack thereof) through trial. Defendants tried to obtain that information cooperatively by requesting that Plaintiff supplement specified discovery responses relating to damages through the present. *See* Fed. R. Civ. P. 26I (obligation to supplement discovery). Plaintiff produced three W-2s which, as the Court may be

1

aware, cover cash and bonus but not the value of any equity.  In other words, Plaintiff's supplement includes no information about his ownership interest in Enfinity.

Plaintiff's attempt to conceal the value of his equity interest in Enfinity from Defendants, the jury, and the Court is highly consequential and appears to be designed to allow Plaintiff to vastly understate his mitigation earnings (and thus overstate his damages).  He is the CEO of Enfinity and, during his deposition in 2021, he admitted that (i) "the vast majority of [his] compensation is through ownership in [Enfinity]," and (ii) he was "granted somewhere around 17 percent ownership in [Enfinity]," but that (3) he did not have a valuation of Enfinity so Defendants needed to "ask [him] in a few years."  Ex. 3, Carlos Domenech Dep. ("Domenech Dep.") Tr. 216:21-217:5; 217:13-18; 218:20-21; 219:3-4.  A few years have passed, and yet Plaintiff now refuses to disclose anything about his ownership of Enfinity or the value thereof.

The reason why is obvious.  Although publicly available information about a private company like Enfinity is far from comprehensive, it is clear that Enfinity has recently been very successful.  Enfinity's website is, for instance, littered with press releases announcing recent large deals.  For instance, one press release states that ICG, a global alternative asset manager, invested nearly €400 million in Enfinity.  *See* Ex. 4.  And this is not remotely the only example of Enfinity's apparent recent success.

In short, Plaintiff should not be allowed to claim significant damages while shielding information about what appear to be very substantial earnings following his termination. Defendants are entitled to the information necessary to accurately calculate damages (or the lack thereof).  The Court should order Plaintiff to supplement written discovery and to sit for a two-

hour deposition to address questions that he expressly testified in 2021 under oath that he would tell the Defendants in "a few years" and that are highly relevant to the upcoming trial.[1]

## BACKGROUND

Plaintiff seeks "compensatory damages including lost wages, earnings, bonuses, stock awards vesting, retirement benefits and other employee benefits" from 2016 through the end of 2024. Dkt. 1 Compl. at 43-44; Ex. 1, Farrell Dep. Tr. 101:5-11, 184:20-185:18, 188:2-7.

Defendants served document requests and interrogatories seeking discovery related to Plaintiff's alleged damages, including information related to his employment or other sources of compensation or income following his employment with SunEdison.[2] Plaintiff initially responded to Defendants' requests on November 30, 2020, and provided supplemental interrogatory responses on March 23, 2021 and November 29, 2021. Ex. 5; Ex. 6; Ex. 7; Ex. 2.

In his deposition, when asked about his self-employment at Enfinity following his employment with SunEdison, Plaintiff testified that he received a salary but that "the vast majority of [his] compensation is through ownership in the company." Ex. 3, Domenech Dep. Tr. 216:21-217:5. In addition to his "$250,000 a year" salary, Plaintiff testified that he was "granted somewhere around 17 percent ownership in the company." *Id.* 217:9, 217:16-18. When asked

---

[1] On May 14, 2024, counsel for Defendants met and conferred with counsel for Plaintiff regarding the relief sought herein. The parties were unable to resolve the dispute.

[2] Interrogatory No. 5 asks Plaintiff to identify all damages that he claims to have sustained as a result of the matters alleged in the complaint, including "providing a detailed computation of: all economic losses; lost wages and benefits; other forms of compensation; and economic and non-economic damages, past and future." *See* Ex. 2 at 7-9. RFP No. 32 seeks documents concerning any compensation paid by SunEdison after Plaintiff was informed of his separation on November 20, 2015; RFP Nos. 39, 40, 41, 44, and 51 seek documents concerning Plaintiff's efforts to obtain employment, benefits or sources of income from January 1, 2014 to the present, including prospective offers and compensation; RFP No. 46 seeks documents reflecting the amount and sources of all income received from January 1, 2015 to the present; and RFP No. 52 seeks W-2s for the years 2009 through the present. *See* Ex. 5 generally.

3

about the value of Enfinity, Plaintiff testified that they "don't have a formal valuation." *Id.* 218:20-21. And when asked if he had an informal valuation in mind, Plaintiff replied, "Ask me in a few years and I will tell you." *Id.* 219:3-4. A few years later, Plaintiff has still refused to disclose the value of Enfinity.

Plaintiff's damages expert acknowledged at his deposition that equity is "[p]art of [Plaintiff's] mitigation earnings," Ex. 1, Farrell Dep. Tr. 183:7-8, 10, yet his expert report omitted the value of Plaintiff's equity in Enfinity from his mitigation calculations. During his deposition, Mr. Farrell testified that he knew that Plaintiff "owns about 17 percent" of Enfinity, *id.* 181:5-6, but that he did not know "how much 17 percent of Enfinity is worth[.]" *Id.* 183:24-184:6. Rather than ascribing value to Plaintiff's equity stake in Enfinity, Mr. Farrell, who never reviewed a single W-2 from Enfinity, was instructed by Plaintiff to calculate equity compensation based on the understanding that it would equal 50% of his cash compensation at Enfinity. Ex. 1, Farrell Dep. Tr. 175:7-176:3. Accordingly, Mr. Farrell testified that it would not matter to his damages opinion if Plaintiff's equity in Enfinity was actually worth $500 million. *Id.* 184:8-10.[3]

Because current information regarding Plaintiff's compensation, including the value of his equity in Enfinity, is a critical component of Plaintiff's mitigation earnings, Defendants requested that Plaintiff supplement his discovery responses to provide this information. As required by Local Rule 104.8, Defendants sent a letter on April 18, 2024 to Plaintiff's counsel requesting a

---

[3] At the parties' meet and confer on May 14, Plaintiff's counsel took the position that the discovery sought was unnecessary because neither damages expert report discusses the current value of Plaintiff's equity interest in Enfinity. That is not surprising, as the expert report was served in 2021 and could not possibly have considered the value of an equity stake in 2024. Moreover, the amount and value of Plaintiff's equity are facts that can be admitted through fact witness testimony. In any event, as is noted in text, Mr. Farrell acknowledged that Plaintiff's equity in Enfinity is part of his mitigation earnings, and did ascribe a value (albeit an artificial one at Plaintiff's instruction) to Plaintiff's equity compensation. The 2024 value of Plaintiff's equity stake in Enfinity is highly relevant to testing and rebutting Mr. Farrell's opinion on this point.

supplemental response to Defendants' Interrogatory No. 5 and Requests for Production Nos. 32, 39, 40, 41, 43, 44, 46, 51, and 52.  *See* Ex. 8.  On April 24, 2024, Plaintiff's counsel responded that Plaintiff would provide a supplemental response to Interrogatory No. 5 and Requests for Production Nos. 32, 39, 40, 43 and 46.  *See* Ex. 9.  On May 3, 2024, Plaintiff produced just three W-2s reflecting salary income from HR company Alphastaff Group, Inc., between 2021 and 2023.  *See* Ex. 10.  Plaintiff has never confirmed that this was Plaintiff's only source of income from 2021 to 2023.  *See id.*  On May 7, 2024, Defendants sent a letter requesting that Plaintiff provide supplemental responses in four areas: (1) Interrogatory No. 5; (2) additional sources of income; (3) bonuses or benefits; and (4) the value of Plaintiff's equity in Enfinity.  *See id.*  At 10:29 pm on May 13, nearly a full week after Defendants' follow-up request, Plaintiff sent a cursory response refusing to provide any further information.  Ex. 11.  To date, Plaintiff has never followed through on his commitment to update his response to Interrogatory No. 5 and has failed to disclose any information about the value of his equity stake in Enfinity.  Plaintiff's final letter dated May 13 failed to even reference his ownership share in Enfinity—the company he started on his own and where he has been self-employed for years.

Due to Plaintiff's failure to supplement his responses to Interrogatory No. 5 and the document requests itemized above, Defendants now file this Motion to Compel in accordance with this Court's Local Rule 104.8.  This motion is timely because it is being served within 30 days of Plaintiff's May 3 unsatisfactory response to Defendants' request for updated responses.  Plaintiff has not complied with his duty to update his responses in spite of multiple requests.

**ARGUMENT**

Rule 37(c)(1) allows for a motion to compel if a party fails to supplement its discovery responses as required by Rule 26(a) or (e).  "As the party opposing the motion to compel, Plaintiff[]

5

ha[s] the burden of showing that grounds exist to withhold documents responsive to the requests at issue." *Kinetic Concepts, Inc. v. ConvaTec Inc.*, 268 F.R.D. 226, 252 n.39 (M.D.N.C. 2010). Plaintiff cannot meet his burden of showing that he is not required to disclose (a) the amount and value of his equity in Enfinity, and (b) any other sources of income.

Rule 26 allows for the discovery of "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b). A party must supplement a discovery response "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing[.]" Fed. R. Civ. P. 26(e)(1)(A); *see also Sullivan v. Glock, Inc.,* 175 F.R.D. 497, 502 (D. Md. 1997) (noting that Rule 26 imposes a "duty seasonably to amend a prior response to an interrogatory …" ); *Rogers v. Tri-State Materials Corp.*, 51 F.R.D. 234, 243 (N.D. W. Va. 1970) ("Good and sound principles of administration of justice will require that answers to interrogatories be supplemented by new information acquired by the answering party").

"The duty to supplement continues beyond the close of discovery." *Covil Corp. v. U.S. Fid. & Guar. Co.*, 544 F. Supp. 3d 588, 595 (M.D.N.C. 2021); *see also Star Direct Telecom, Inc. v. Glob. Crossing Bandwidth, Inc.*, 272 F.R.D. 350, 358-359 (W.D.N.Y. 2011) (granting motion to compel and finding motion "not untimely because the duty to supplement continues even following the close of discovery"); *Iweala v. Operational Techs. Servs., Inc.*, Civ. Action No. 04-02067, 2010 WL 11583114, at *1, *3 (D.D.C. Apr. 13, 2010) (unpublished) (ordering supplementation pursuant to motion to compel filed over four years after close of discovery).

Defendants asked Plaintiff to supplement his responses to the following requests:

- Interrogatory No. 5, which asks Plaintiff to identify all damages that he contends to have suffered as a result of the matters alleged in the complaint, including

6

> "providing a detailed computation of: all economic losses; lost wages and benefits; other forms of compensation; and economic and non-economic damages, past and future."
> - Defendants' Requests for Production ("RFPs") Nos. 32, 39, 40, 41, 43, 44, 46, 51, 52 seeking documents concerning sources of compensation or income after his employment with SunEdison.

The discovery sought is relevant to critical issues and proportional to the needs of the case—specifically to the amount of Plaintiff's mitigation earnings, which directly bears on the amount of recoverable damages. "Employees discharged in violation of Sarbanes-Oxley have a duty to mitigate their damages." *Sharkey v. J.P. Morgan Chase & Co.*, No. 10CV3824, 2018 WL 1229831, at *10 (S.D.N.Y. Mar. 5, 2018) (citing *Dailey v. Societe Generale*, 108 F.3d 451, 456 (2d Cir. 1998)). A "plaintiff in an employment case may only 'recover the amount of his losses caused by the employer's breach reduced by the amount the employee obtains, or through reasonable diligence could have obtained, from other suitable employment.'" *Feldman v. L. Enf't Assocs. Corp.*, No. 5:10-CV-8-BR, 2012 WL 6552921, at *2 (E.D.N.C. Dec. 14, 2012) (quoting *Anthony v. Atl. Grp., Inc.*, Civ. Action No. 8:09–cv–02383–JMC, 2012 WL 4009490, at *2 (D.S.C. Sept. 12, 2012)). Accordingly, Plaintiff's damages in this case—his alleged lost earnings had he remained employed by SunEdison after November 20, 2015—must be reduced by any earnings he has made since that date through other work.

Plaintiff claims that he mitigated his damages by starting his own company, Enfinity. *See* Ex. 1, Farrell Dep. Tr. 139:21-140:3 (quoting expert report as stating "Mr. Domenech's position at Enfinity is more of a self-employed entrepreneur than a salaried employee"); Ex. 3, Domenech Dep. Tr. 258:7-258:8 ("I work for [E]nfinity Global, I work for myself"). It is well established that when a former employee seeks to mitigate via self-employment, "an employee's back pay award should be offset by the employee's *aggregate economic gain*." *See Neel v. Mid-Atlantic of Fairfield, LLC*, No. SAG-10-cv-405, 2012 WL 3264965, at *9 (D. Md. Aug. 9, 2012) (emphasis

added) (citing *Smith v. Great Am. Rests., Inc.*, 969 F.2d 430, 439 (7th Cir. 1992)); *see also Carden v. Westinghouse Elec. Corp.*, 850 F.2d 996, 1005–1006 (3d Cir. 1988) (listing considerations in calculating mitigation earnings when plaintiff is self-employed, including "[h]as the plaintiff benefited by an increase in value of the business?"); *Ford v. Rigidply Rafters, Inc.*, 984 F. Supp. 386, 389 (D. Md. 1997) (reasoning that "[t]o make the plaintiff whole, the award of back pay should be the difference between what the employee would have earned had the wrongful conduct not occurred from the period of termination to judgment, and the actual earnings during that period").

The emphasis on aggregate economic gain is critical in the self-employment context because mitigation will often include not just salary, but also business profits and increases in the value of ownership. For example, in *McCluney v. Joseph Schlitz Brewing Co.*, 540 F. Supp. 1100, 1103-1104 (E.D. Wis. 1982), *aff'd*, 728 F.2d 924 (7th Cir. 1984), a Title VII plaintiff, who was self-employed, worked for seven years in a line of work that rewarded him with ownership interests "valuable at the time the services were performed and intended to become more valuable as time passed." As evidence of his income, plaintiff presented his tax returns, which "viewed in isolation" indicated that plaintiff was a "destitute worker." *Id.* at 1103. The court reasoned that "it would ignore economic reality to exclude [plaintiff's] in-kind earnings from the calculation of back pay." *Id.* In particular, the court noted that the plaintiff "received an ownership interest of 16%" and that "investors paid $46,000.00 for an equivalent interest" and thus "[a]ll or part of that value represents the value of [plaintiff's] services[.]" *Id.* at 1104. The court reasoned that the defendant's obligation of back pay damages should be reduced accordingly.

In other words, Plaintiff's mitigation earnings from Enfinity include not only his salary, but any benefits he received, as well as the value of his equity in Enfinity. Plaintiff previously

8

testified that he owned 17% of Enfinity, a figure relied upon by Mr. Farrell for calculating damages and mitigation. *See* Ex. 3, Domenech Dep. Tr. 217:13-18; Ex. 1, Farrell Dep. Tr. 181:2-13. Plaintiff further testified the "vast majority of [his] compensation" at Enfinity was equity, Ex. 3, Domenech Dep. Tr. 217:3-5; when asked to estimate the value of his 17% interest in Enfinity, Plaintiff replied, "Ask me in a few years and I will tell you[,]"*id.* 219:3-4. Given this clear indication that Plaintiff has been compensated with equity, Plaintiff is obligated to provide this information now.[4]

In response to Defendants' requests that Plaintiff supplement his discovery responses, Plaintiff provided only three W-2s for the years 2021-2023. Plaintiff has refused to provide the amount and value of his equity compensation from Enfinity—even though his own expert includes equity as part of his mitigating compensation, and even though, when asked for the value of his equity in his deposition, he testified that he would disclose that information closer to trial.

This information is especially important now. An investor recently invested €400 million in Enfinity. *See* Ex. 4. There is accordingly a strong possibility that the value of Plaintiff's equity outstrips the value of any supposed lost compensation, such that he has no recoverable damages in this case. Plaintiff is required to disclose the information so that the jury may be apprised of it. *See Smith*, 969 F.2d at 439; *Carden*, 850 F.2d at 1005–1006; *McCluney*, 540 F. Supp. at 1103-1104.

Plaintiff has previously asserted that Defendants should have moved to compel earlier, but that ignores the reality that he has an ongoing duty to update discovery responses to which he has

---

[4] During the parties' meet and confer on May 14, Plaintiff's counsel asserted that no further discovery was needed because Plaintiff has disclosed the amount of his salary and bonus (through the W-2s) and that he owns 17% of the equity in Enfinity. But Plaintiff has provided no information about the ***value*** of his 17% equity stake in Enfinity, which is part of the information sought by this motion.

9

already responded. He also specifically told Defendants in his deposition that we should ask him in "a few years and I will tell you" about the value of his equity stake in Enfinity. Ex. 3, Domenech Dep. Tr. 219:3-4. And recent public information makes clear that his business, Enfinity, has been enjoying extraordinary success, which changes the circumstances and makes information about the value of his equity in Enfinity unquestionably relevant to, indeed potentially dispositive of, Plaintiff's potential recovery of damages in this case. Moreover, because Plaintiff is seeking damages through 2024, information regarding mitigation of those damages through 2024 is necessary; Defendants could scarcely have sought that information before 2024. Thus, any doubt about whether more information about his equity stake in Enfinity meets the proportionality standards for discovery has been allayed. The Court should order Plaintiff to produce updated materials and responses and to sit for a short two-hour continuation of his deposition (over Zoom, if he prefers).[5]

## CONCLUSION

This Court should compel Plaintiff to update his discovery responses in accordance with Rule 26(e) regarding damages, income, benefits, bonuses, and the value of any ownership interest in the company he helped start. Specifically, Plaintiff should be compelled to update his responses to Interrogatory No. 5 and RFP Nos. 32, 39, 40, 41, 43, 44, 46, and 51. Plaintiff should also be compelled to sit for a two-hour continuation of his deposition (over Zoom, if he wishes) to explain the value of his equity stake in Enfinity.

---

[5] Plaintiff cannot claim any cognizable prejudice from the timing of this request. Information about Plaintiff's compensation and Enfinity's value is no more difficult to produce now than it would have been earlier. Indeed, because Plaintiff's damages request extends into 2024 and thus implicates his earnings in 2024, Plaintiff presumably would have objected to a demand that he provide full mitigation information any sooner.

Dated: May 15, 2024                                   Respectfully submitted,

                                                                       **WILMER CUTLER PICKERING HALE AND DORR LLP**

*/s/ Michael G. Bongiorno*
Michael G. Bongiorno *(admitted pro hac vice)*
7 World Trade Center
250 Greenwich Street
New York, NY 10007
(t) (212) 230-8800
michael.bongiorno@wilmerhale.com

Allyson Slater *(admitted pro hac vice)*
Disha R. Patel *(admitted pro hac vice)*
60 State Street
Boston, MA 02109
(t) (617) 526-6000
Disha.patel@wilmerhale.com

*Attorneys for Defendants TerraForm Global, Inc. and TerraForm Power, Inc.*

**CERTIFICATE OF SERVICE**

    I hereby certify that on this 15th day of May, 2024, a copy of the foregoing was served via CM/ECF on all counsel of record.

                                                              */s/ Michael G. Bongiorno*
                                                              Michael G. Bongiorno